SATTERTHWAITE, P. J.,
The first and final account of Union National Bank and Trust Company, trustee for the life of settlor under said inter vivos deed of trust, was presented to the court for audit, confirmation and distribution of ascertained balances on August 3, 1970, as advertised according to law. Due proof of appropriate notice thereof to all parties legally interested in said trust estate appears in the record. The occasion for the accounting was the death of Elizabeth Wagner, settlor-life tenant, on February 6, 1970. The trust has now terminated, and principal is distributable
*606 Several questions were presented at audit, and a brief statement of apparently uncontradicted facts will provide the background therefor. Settlor executed the deed of trust in question on February 8, 1965, at which time she was, and for many years prior thereto had been, a resident of Keller s Church, Bedminster Township, Bucks County, Pa. Accountant, sole trustee, had its principal office in the Borough of Souderton, Montgomery County. The trust,” revocable by settlor in her lifetime, was for the purpose of investing the corpus and paying income to settlor for life, with principal, and any undistributed income, payable upon her death to her grandson, Julius Feraldo, Jr. Accountant, by the trust deed, was “authorized, in its discretion, to use principal for maintenance and support, for educational requirements, medical and surgical expenses or any other needs of Settlor, as beneficiary.” Accountant had full authority, inter alia, “to accept in kind and retain any real or personal property ... as a part of this Trust . . . and to invest in any form of property, real or personal, . . . without restriction to legal investments for fiduciaries.” Settlor reserved the right to add other property to the trust.
Settlor died on February 6, 1970; she had not revoked the trust. At an undisclosed time prior to her death, she had removed her residence to Philadelphia, and letters of administration in her intestate estate were granted by the Register of Wills of Philadelphia County to one Joseph Wagner. The relationship of the latter to settlor does not appear, but apparently he, and possibly others, are settlor s heirs at law in addition to Julius Feraldo, Jr., her grandson. The size and composition of her individual estate for administration and intestate distribution do not appear.
The first problem presented at the within audit, *607 initially raised by the auditing judge of his own motion, is whether or not this court has venue under section 306 of the Orphans’ Court Act of 1951, 20 PS §2080.306, no prior jurisdiction over this estate having been exercised by any court. Section 306 provides that under such circumstances venue shall be in the county “where at the time being is the situs of the trust.” Section 308(b)(1), 20 PS §2080.308 (b)(1), directs that the situs of an inter vivos trust, when not provided for in the trust instrument, may be found, after the death of a resident settlor, either in the county where letters have been or could have been granted to the settlor’s personal representative, “or in a county in which any trustee resides or is located.”
After due deliberation, the auditing judge has resolved this question by holding that a situs of this trust may be found within Bucks County under section 308, notwithstanding settlor’s residence in Philadelphia at the time of her death and the location of accountant’s principal office in Montgomery County. This conclusion is reached by reason of the further circumstance, developed in the evidence at the audit hearing, that accountant also has a branch office in Hilltown Township, within Bucks County. Accordingly, and in the absence of compelling authority to the contrary, it is believed that this county qualifies as one within which the trustee “resides or is located” within the meaning of section 308. Whether a branch office could qualify as a “residence” of the trustee, had the statutory language been confined to that concept, need not be decided. Regardless, and in view of the more extended criteria in the statute, it seems reasonable to conclude that a corporate entity may be said to be “located” within the meaning of this venue rule wherever it maintains an office or place *608 of business, whether or not such is its principal office. . .
The other claim, asserted by the administrator and opposed by accountant on the ground that payment thereof out of the trust estate is unauthorized, is that for the services of a funeral director in the amount of $1,203.05, apparently for settlor’s funeral and burial. It does not appear who actually paid this bill, if anyone. Here, again, the auditing judge agrees with accountant. This claim for a post-death matter is not within the authorized power of the trustee to pay out of the trust estate for lifetime purposes of settlor. Moreover, even if it had been, the discretion to pay or not to pay would be that of accountant as trustee, and not that of a creditor or of settlor’s personal representative or heirs, or even of this court. The funeral bill accordingly is hereby disallowed.
The final problem is that of the proper treatment and disposition of the $8,000 note of Julius Feraldo, Jr., the remainderman under the deed of trust. Accountant has included this receivable as a trust asset and proposes to award it to the obligor as an in kind distribution to him as part of the remainder estate. The administrator contends, however, that this note should not be regarded as a part of the trust, being rather an individual holding of settlor, which, accordingly, should be awarded to him to be administered as an asset of her intestate estate.
The facts and circumstances surrounding the origin and subsequent handling of this note may be summarized as follows. During the summer of 1968, Feraldo discussed with settlor and Charles Hoeflich, president of accountant and a neighbor and friendadvisor of settlor, his needs for cash funds for personal purposes. Settlor at first proposed to advance the amount outright as a gift from the within revocable trust estate with accountant, but it was later *609 agreed that the transaction be regarded as a loan, with Feraldo paying interest thereon as a business transaction to provide settlor with income. The details of the arrangement were obviously of no concern to settlor so long as she received income thereon, she having provided in the trust deed for the entire trust estate to pass to her said grandson in any event after her death. On July 29, 1968, Hoeflich drew the note, using a printed confession of judgment form provided by the bank, by which Feraldo promised to pay $8,000 on demand after date at the bank to the order of Elizabeth Wagner (settlor) with interest. Accountant disbursed the $8,000 fund by its check payable directly to Feraldo and charged the same to the within trust account. Inadvertently, no endorsement of the note by settlor over to accountant as trustee was made, although accountant did receive and retain physical possession of the note in the trust files. A month later, on August 29, 1968, personnel of the trust department of accountant noted the discrepancy in the absence of a formal transfer of the note to the trust and its nonentry as a judgment lien, and, without consulting counsel, accordingly prepared a letter which Hoeflich had settlor sign, whereby she did “authorize Union National Bank and Trust Company of Souderton, my Trustee under the . . . [instant trust] ... to retain the following Demand Note in said Trust, without entering Judgment: . . . [identifying the same by date, amount, name of maker, name of payee, and interest rate] ... I also authorize my Trustee to collect interest only on this Note at the present time.” Accountant did collect interest on this obligation for the account of the trust, included the note in its personal property tax returns as an asset thereof, and generally treated it as part of the corpus administered by it as trustee.
*610 Under all of the circumstances, the auditing judge believes it to have been clearly manifested that both settlor and accountant mutually regarded this note as a substituted asset of the trust, exchanged for the savings investment out of which the proceeds of the note had been furnished. Settlor’s letter to accountant corroborates and documents this understanding, rather than contradicting it as the administrator contends. Specific purpose was stated therein to authorize accountant “to retain . . . [the note] in said Trust”; in view of the relationship of the parties, accountant was further exonerated from any real or imaginary duty either to cause judgment to be confessed thereon or to collect anything more than interest notwithstanding that it was a demand note. No intention to negate the creation of a trust as to principal can be derived from such provisions. The note accordingly is properly treated as a trust asset and should be distributed as such. . .
The account is hereby confirmed, and it is ordered and decreed that Union National Bank and Trust Company of Souderton, trustee as aforesaid, shall make and pay the distributions herein awarded forthwith upon the absolute confirmation hereof.
And now, December 23, 1970, the within adjudication is directed to be filed and is hereby confirmed nisi.